Case number 18-5683, United States of America v. Rene Boucher. Oral argument is not to exceed 15 minutes per side. Mr. Wood for the appellant. Your Honor, may it please the Court, Bob Wood on behalf of the government, I'd like to reserve 4 minutes for rebuttal. I have to say I remember when my judge did that for me. It was a great day. It's a very special occasion for us. The Court should remand for resentencing. The sentence in this case is substantively unreasonable given the seriousness of the injury and the disparity the decision creates, among other things. Congress has, consistent with federal interests, federalized only a limited class of assaults. And on the government's review, at least, this case, when compared to any other federal assault... What is the relevant comparison for disparity purposes? This particular statute hasn't been used very often, right? That's correct, Your Honor. And for that reason, so I guess you have to look at it a couple of ways. First, there should be some basis for comparison under 3553A6. And here it's difficult to find. But as I was about to enter into, Congress has federalized certain assaults and those assaults fall under the same guidelines. And the guidelines depend on the nature of the injury, among other things. And as the government sees it, the proper comparison is similar assaults. This is a case where federal jurisdiction lies because of the status of the victim. But the case isn't about a senatorial assault. It's a federal assault. And so the comparison, for purpose of fairness, should be other federal assaults. If, at least looking at the other assaults that the government found with similar injuries in territorial maritime jurisdiction, if something like this, a neighborly dispute, which there weren't any others in the record that the government could find, but there were shoves and family disputes and other issues that arose with similar injuries, it was under the same guideline, similar ranges. And if the ranges were higher, the defendants received sentences within or close to, sometimes above those ranges. Aren't there hundreds of assaults that fall in that category? There are. And this is always a challenge. Usually we're on the other side of this issue, Your Honor, trying to suss out how these sentences fall. Certainly, assaults on Native American reservations, assaults in prisons, they happen fairly routinely and are prosecuted in the federal system. As we talk about this in the appellate world, at least on our side sometimes, how do we limit ourselves? How do we find these cases? Generally, what we do is try to find cases with some sort of an opinion, and where a decision has been made and ratified by a court of appeals in some sense, even if it hasn't been sort of like a state summary affirmance, even if it hasn't been ratified in the sense that someone challenged the sentence. But there is a court of appeals decision on the issue where a district court has made a decision. Did you look to the similarity of their criminal records in making that determination? Yes, and in a couple of ways. So there were, I think, in the just limiting, you know, there's sort of three buckets for these federal assaults, but looking at what I would view as the, given the nature of this dispute, probably the most similar ones are the ones on reservations. And there was, I think, one of those defendants had a criminal history, and that bumped the person's guidelines range up to about double what the 21 to 27 months is here. But the sentence was within that range. There were two, I think there were five reservation cases. There were two with no criminal history, but the guidelines range was still a little bit higher. And I can't, off the top of my head, detail why it was a little bit higher, but they were guidelines cases. One of those two was 20% below the guidelines, but nothing like 95% below the guidelines. The defendant here suggested that we look to what might have happened in the state court with the county attorney testifying and all that. Should we consider that at all? No, for two reasons, your honor. This court's precedents are clear, as are other circuits' precedents. This is an uncontested area of the law that you look at federal comparators. And at the same time, I'd also say that there is a practical reason not to look at it. The county attorney testified, yes, we did charge a misdemeanor. We didn't know the nature of the injury at the time, and had we known, we would have referred it for possible. I mean, there's no real way to know. Possible felony prosecution by the Commonwealth Attorney's Office. But it's just the federal government stepped in before that decision could be made. But when you walk through- But there was no, was there any indication that the trial judge relied on that testimony at all? I know the judge said, I don't think this crime was politically motivated, or she said that it was a neighborly dispute, whatever, which is kind of getting there, I think. But doesn't actually rely, the sentence is exactly the same, right, as the number that was thrown out there. But I don't think there's any other indication that she actually did rely on it, right? The only indication I would say that's actually in the record is the sentence is exactly, she seemed to accept that premise, but there is no specific statement by the district judge that I believe this is more naturally comparable to a state assault, misdemeanor assault case. But getting, but specifically indicating that it was a dispute between neighbors, that would be getting there, don't you think? I think that's getting there, and that's where in government's view, even if you take that premise, which under the way that basic comparisons are supposed to be made, you shouldn't take that premise. But even if you do, then you're in other federal assaults that have no political, where the motivation is not part of the equation. And where it's a family dispute, it's a punching somebody on a lawn. Maybe it doesn't have to do with lawn debris, but we have cases like that that, or a doctor patient dispute based on the irritating wait times in a waiting room. Those sorts of comparisons are the state assault law of federal law because of the territorial jurisdiction. And that's where the comparison should be made if the logic, as your honor is saying, is this is like what state courts see because it's a neighborly dispute. This is not an assault on a federal officer performing duties on duty as assigned. Is the statute, is it essentially a strict liability? I mean, is it, you don't have to prove that under, specifically under the statute, right? You don't have to prove that the person did it because the victim is a senator, right? No, and that goes directly to the point of the statute. The statute is to protect senators and members of Congress because of their status. Now- But you don't even have to know- The elements of the crime have, there's no- So you don't even have to know, I mean, if I just happen to, you know, punch somebody in a bar and it happens to be a senator, I'm subject to the statute. That's right. You know, prosecutorial discretion could come into play at that point, but that's, the elements of the statute are met in that case, sure. But where here, they, getting back to this case, the defendant clearly knew who his neighbor was, even though they hadn't spoken for a long time. And that goes also to the point that the general public, especially in districts or states where the representatives are their representatives, that's what they see them as all the time. It's sort of like being on duty. So, he knew, and again, it doesn't go to proof of the elements, but this isn't a case where the judge could say, this was both politically, this both lacked political motivation and it's a clear case of not knowing who in the world you're attacking. So, in other words, this should be a core 351 offense. The only- Meaning you just, you are here on that jurisdictional grant as opposed to that conceptual problem that's addressed by the statute. Right. That's right, Your Honor. And even to the extent the government relies on or cites the political motivation cases from 20 or 30 years ago, it's largely about the injury, not about how political motivation might come into play here or not. And we're not saying a judge can't consider such things. A district judge has the discretion to consider all sorts of aspects of a crime. So, we're in the main of assault type claims. And what takes this out of a fairly significant discretion that is granted to judges? And we know the request was for no time at all. And then the sentence ended up being the 30 days plus, what, 100 hours of community service, $10,000 fine, three years of supervised release. So, there were other components of the sentence. What takes this far enough out of the heartland that it would be an abuse of discretion? Sure. I'd start with one thing and then turn quickly to another. First, the fine is real, but it's at the bottom of the advisory range. And I don't think that that should be considered as somehow offsetting. A $10,000 fine, he's a doctor. I don't know if he's a well-off doctor or not a well-off doctor, but it's not like a fine for a penurious defendant. And it is at the bottom of the advisory range. Turning then to the abuse of discretion aspects, it's an abuse of discretion because the judge relied on his history and characteristics, which are common enough among the professional class, that they're not extraordinary really at all. And I don't mean that as a personal statement about him. It's a statement about the way that the sentence could possibly be justified on pretty ordinary background characteristics that other defendants... They're not present to an unusual degree. And you need only look at other assault cases. The defendants, the government cited this, a couple of the defendants really had bad circumstances in their past. Difficult family environments, difficult family environments in childhood and difficult family environments in the present. And they got higher sentences. That should, if anything, I'm not saying those sentences were wrong, but if anything, it should be the reverse if that's going to be a justification. That, in the government's view, makes this an abuse of discretion. And separately, I want to, these things bleed together. But that's about the seriousness of the, that's about the disparities among individuals. But the seriousness of the offense is real here. The senator, we don't have anything in the record about the senator's ongoing pain and suffering. But seven months of a record of pain and suffering is pretty significant. There was a case involving a veteran, the government cited Conklin, I think it was, where the veteran attacked a doctor at a VA center and three days of pain and suffering led to a two-year sentence for that defendant. And that, you know, again, the facts of every case are different. District courts have the discretion to address those facts, but where there's very little mention of the guidelines. The judge doesn't have to go through jot and tittle of the guidelines, but where there's very little mention of it, a near 100% variance, and that variance is based on something that is entirely unremarkable in the defendant's background, that is demographically different about the defendant's background, that this court has said in Christman is not the kind of thing that should justify a massive variance. And is, lacks complete regard for the injury that was caused. That some lengthier, even if the, on remand of the sentence is relatively similar, but there's a real reckoning with the injury that was caused here with the, I mean, I don't know how these things balance out. But this was an abuse of discretion because the basic crime was not part of the judge's review of the case, it seems. There was more discussion of the injury. Your light is on, but you will have all of your rebuttal time. Thank you. Police court, Mr. Wood, good morning. My name is Matt Baker. I have a law office in Bowling Green, Kentucky, and I represent Dr. Rene Bechet. Members of the court, I want to make essentially two or maybe three points to you this morning, depending on my long-wittedness or my brevity. But the first thing I want to discuss with the court is that this appeal, centrally, is about substantive unreasonableness or substantive reasonableness. And the court has repeatedly said in both published and unpublished decisions that a sentence is substantively unreasonable if a trial court selects a sentence arbitrarily. That's the first problem. In this case, I would submit to the court that there is no arbitrariness. There is no capriciousness. Judge Battani came in from Detroit. She is a judge who has sentenced many, many, many people and has, in her transcript, she says she has resolved many of these types of disputes. She took 10 pages of transcript to evaluate the facts of this case, discussed the three 3553A factors. On the appeal of these cases, we don't consider really what the background of the judge is any more than the judge considers the background of the offender, right? We have experienced judges who are reversed periodically, you know. I say that, yes, I agree with that. I say it only because there's a line of cases or a thread of cases, Judge Seiler, that says that the trial judge has a ringside perspective on sentencing issues. And they are sort of down in the trenches, so to speak. And that's the reason that I brought that up. Counsel, I'm concerned a little bit here about the disparity issue. Can you address that? I mean, there aren't a lot of cases involving this particular statute. The three that have been cited all have similar sentences. This one has physical injuries. And I'm concerned that this case would become a benchmark for what this statute is, despite the injuries here. In considering the disparity issue, and it's the elephant in the room in this case, I think. I think of this case as a garden variety assault case. I practice a lot in the Warren District Court. I'll be there tomorrow morning. I'll be there Friday morning. You think we should follow what the District Court in Warren County would do in this kind of a case? I think it provides some guidance to this court, yes, sir. So for Senators assaulted in the District of Columbia, we look at the District of Columbia courts to see what they would do. And so in Tennessee, we look at what the Tennessee judges might do. So isn't that a disparity? Because some of those courts don't give out much of a sentence, frankly. Well, the point I was going to try to make to this court is that this case is much like a lot of what happens in the District Court. So in that case, it's sort of a run-of-the-mill or the run-of-the-mind sort of situation. But it does involve a U.S. Senator. And so that's what makes it unique. And that's the point— Doesn't our case law forbid us from making a determination of sentencing based on what the state law is? I think the United States v. Malone in 2007 said that it's impermissible for a district court to consider the likely state court sentence as a factor. So isn't that off-limits? Well, I'm not sure that I would completely agree with that, Judge. And the reason I say that is— I hope this doesn't come out flippantly. It's certainly not intended that way. But I know that you wrote an opinion in a case that involved a fellow who had some shotgun shells in his possession, in a concurring opinion. And your discussion in your concurring opinion was that in a lot of states, the possession of those shotgun shells wouldn't be a crime at all. And I thought that that was a very remarkable and a very recent sort of concurring opinion. In that case, I believe the defendant was facing a mandatory minimum sentence of 15 years just right off the bat. And so I think it has to—I think it has to factor into your thought process, either—I don't know if it's consciously or even subconsciously. But at the end of the day, this is a dispute over yard trash between two neighbors. Whether it's a dispute about—forgive me for sounding crass, but your dog pooped in my yard or— But what happens when—fine, it's a garden variety dispute, but then the victim ends up in the hospital, has pneumonia, broken ribs. I mean, isn't—I mean, the nature of this dispute is— you can say it's trivial, it may be, but the injury is not trivial, right? And I'll be the last person in the room to characterize it as trivial. I count Senator Paul as a friend of mine. I don't know if he feels the same way about me anymore, but I know that broken ribs hurt. I've had them myself. But he did go back to work within seven days. He never went to the hospital. He never took any pain medication. But why should that—I mean, why should that run in the favor of the offender if somebody decides, hey, I don't want to take pain meds, I'm worried about getting addicted or whatever, and so then you're like, oh, okay, that must not be serious. Again, I just—I think that you have to— it's a multifaceted, multifactorial issue, and— And isn't one of the keys in that circumstance that you have to show if you have the more substantial the variance, the more substantial the reasons supporting it need to be? And why does this case provide that necessary substantial reason? Again, the court spent about 10 or 11 pages of transcript, I believe, fulfilling that in this case. Judge Battani, she went meticulously through all of the 3553A factors one by one, discussed them one by one. If she were given now full probation, would that be reasonable under the circumstances? I think a judge—I think a judge could. Again, the guidelines are just that. Guidelines, I think they no longer became mandatory after the Booker case. And in, I think, the Gull case said that the court is entitled to— the trial court is entitled to a lot of due deference, and that's what we're asking this court to do, to afford deference. I did find some authority that I wanted to convey to the court. It's not in my brief, and I apologize for that. But it does go to the issue of disparity. And it's the Thomas case from 2010. It's the Sixth Circuit, and it says, A comparison of the defendant's sentence to those imposed in other singular cases is weak evidence to show unreasonableness. Singular case comparisons opens the door to endless rummaging by lawyers through sentences in other cases, each finding random examples to support a higher or lower sentence as their client's interests dictate. I was in Judge Stiver's court last year, and I was trying to convince him to probate a doctor for over-prescribing pain medications. And I gave to him lots of cases from around the country where doctors had been afforded probation. And he looked through them, and he said, Man, this is impressive. This is good research. How did you do all this? I said, Well, a lot of hard work. He said, I don't see any cases in here where the doctor was incarcerated. I said, No. He said, Did you find any of those cases? I said, Yes, sir. Sure did. He said, So you cherry-picked the ones you wanted to give to me? And I said, Yes, sir. That's what I did. I cherry-picked the ones I wanted to give to you. And so I would ask that this court not put too much emphasis on an assault that was committed by a prisoner against a guard, or an assault that was committed against a doctor, or on an Indian reservation. And I understand that point, Counselor. But how many cases are there where somebody got a 95% reduction, essentially, in a case involving this kind of assault, this kind of injury? I mean, I understand. Maybe you cherry-picked them, whatever. But I mean, the existence of one or the existence of two would be helpful, I think, to know that it's at least within the realm of possibility. I found some cases. There are child pornography cases where no sentence or a one-day or a one-week sentence has been issued. There are some white-collar cases where I've found that as well. I mean, there was a white-collar case I argued that I lost on that issue. Pepple. Yeah, I read it. Read your brief. But I mean, our court was pretty clear about using the discouraged factors, right? The defendant's characteristics. We said you're not supposed to, you know, unless it's unusual, you're not supposed to do that. In the end of the day, I'm here to try to convince you that this is a garden-variety-property dispute between two neighbors, that the judge, in this case, did a very careful, thorough, meticulous job of evaluating all of the proof. The government called no witnesses at sentencing. They relied on the statements of Senator and Mrs. Paul. We presented lots of information in our pre-sentence report. We called witnesses at sentencing. The judge had this ringside seat perspective. Of course, you could get a lot of good witnesses if you had somebody like Mr. Madoff, you know, and all of his big fraud. He had a lot of good things in his background, never been convicted, and he didn't harm anybody. But, you know, there are a lot of people who, for the first time committing a crime, have a great background. I sent up Baptist Preacher off one time because he was taking kickbacks from people, coal companies. You know, a lot of people have great backgrounds, but you've got to consider also what's happened to the victim. Congress passed this law in order to protect federal officers. For years they didn't have any special statute about that. Should we consider that at all? I think these statutes were enacted back in the 60s to protect federal officers. In point of fact, a fellow or, I guess, a lady can punch or assault a senator or a congressman or a federal officer and not even know he or she is a federal officer or a senator and be facing federal repercussions and prosecution and sentencing in federal court. It could happen at a football game between spectators. It could happen anywhere. And so the law does recognize that they are entitled to this protection. I did note that there was a constitutional challenge to that on an equal protection basis as I was doing my threshold research in this case, and they are entitled to that protection constitutionally. So at the end of the day, we believe that we demonstrated to the trial court a justifiable basis for imposing the sentence that it did, and we are asking that this court accord the trial court its due deference and to affirm the sentence. I see I have five seconds left, so thank you. Well timed. Thank you. Thank you. Better timed than I, Counselor, and I'll try to wrap up quickly given that I went over last time. Thank you, Your Honors. I would just make a few rebuttal points. First, on the ringside perspective of the district court, the government is always pushing that as a critical consideration in a sentencing review, but one would think that that ringside perspective would at the very least have caused the judge to discuss the injury, the serious injury in this case. And I would just submit to the court that although the judge was thoughtful about some things, the judge did not avail herself of the ringside perspective with respect to the seriousness of the offense and also didn't discuss disparities at all. On this question of whether the cases were cherry picked or the singular case comparison, if the government missed any cases, it was by accident. As I said, we limited our review to cases with some sort of appellate perspective, but this is not a singular comparison case. We took what we saw as the universe of comparable cases, and this is the one outlier. We could have compared to all of them, but we're trying to compare to a general trend where similar assaults typically result in a two-year or more sentence. And I would also offer that although Senator Paul went back to work quickly, he then had to go to the hospital because the injury was so serious that he developed pneumonia from ribs broken in half that had, I don't know all the medical details, but that appeared to have punctured his lung. So he ended up in the hospital multiple times as a direct result of this attack.  Did the district court justify Dr. Boucher's slap on the wrist given the seriousness of the injury, and did the district court justify giving him special treatment based on his background? The government submits that the answer to both questions is no, and that's why the sentence is substantively unreasonable. And with that, I'll rest on my briefs. Thank you both for your arguments and your briefing, and we'll take the case under advisement and enter an opinion in due course. Thank you. You may call the next case.